IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

NORTHERN DISTRICT—SUNBURY 1855.

## The Carbon Run Improvement Company *versus* William M. Rockafeller.

A holder of land by warrant and survey, may, with the sanction of the Board of Property, contract the lines of his survey and throw out part of his land, so that he do not prejudice other interests; and the part excluded relapses into the general mass of public lands, and may again be appropriated by warrant and survey, as vacant land.

Where the part thrown out lies within the lines of another survey, it does not become vacant land, but relieves that survey from the consequences of an interference.

An older survey cannot be changed, contracted, or enlarged by the adjustment of the lines of a junior survey.

Whether a line was actually run upon the ground, or left by the surveyor as an open line, was a question of fact for the jury, and their finding will not be reviewed in this Court.

ERROR to the Common Pleas of *Northumberland county*.

This cause was tried at a Special Court, held by Hon. A. S. WILSON, in January, 1855, and was an action of ejectment brought by William M. Rockafeller, to recover a tract of land in Coal township, Northumberland county, containing 98 acres and 83 perches and allowance.

The plaintiff claimed by virtue of a warrant to himself, dated 29th March, 1853, and a survey in pursuance of the same on the 7th April, 1853. The defendants alleged that the land had been previously appropriated by warrant and survey, and showed a warrant to Esther Cramer, for 300 acres, dated the 27th Decem-

[The Carbon Run Improvement Company *v.* Rockafeller.]

ber, 1792, and survey thereon for 319½ acres, dated the 20th October, 1794, returned and accepted the 12th of March, 1803, and a patent to the warrantee on the 17th of September, 1812; and contended that the land in dispute was embraced within the lines of this Esther Cramer Survey.

They further proved that the land in dispute had been embraced within the lines of a survey made for John Carson, on the 28th of October, 1794, in pursuance of his warrant dated November 18, 1793; and that Robert O'Neil became the owner of this Carson survey, and on the 5th of March, 1824, presented his petition to the Board of Property, in which he set forth: that he was the owner of the John Carson survey, "and that the said survey is interfered with by a survey made on a warrant in the name of Esther Cramer, dated December 27, 1792. Your petitioner being desirous of obtaining a patent for his land clear of said interference, prays that an order may be given to the deputy surveyor, authorizing him to make a resurvey of said tract of land, surveyed in the name of John Carson, and exclude therefrom the interference aforesaid," &c. On the following day the order of resurvey issued, and was executed on the 26th of May, 1824. This resurvey contained 131 acres 54 perches, and was returned and accepted on the 12th of June, 1824, and a patent for the land embraced in it was issued to Robert O'Neil on the 6th of September, 1824. This survey and patent does not include the land in dispute.

The Esther Cramer survey, by running the north and south lines from known and admitted monuments on the ground, the courses and distances marked on the official draft, would have embraced *all* the land in controversy: or resting at the pine corner of James Hepburn on the south line, and giving the north line the *full* call of the official survey, would have included all the land embraced within the Rockafeller survey, with the exception of a few acres at the south-east corner.

The plaintiff below alleged, that the land was vacant at the date of his application, and relied upon his warrant and survey.

Certain points were presented to the Court, and their instruction to the jury prayed upon them. The points, and the answers of the Court upon them, and the general charge, so far as they are the subject of the assignment of error, are given below.

Plaintiff's 1st point: "That if the jury believe that the Pine (the north-eastern corner of the James Hepburn, in the line of Luke Hoglin) is the south-eastern corner of Esther Cramer, and that the northern line of Esther Cramer, running from the White Oak, the south-eastern corner of Magdalena E. Leverson, N. 88° E., was not originally run on the ground, then the survey of Esther Cramer must be closed by a line running from the said Pine corner N. 2° W. to intersect the said northern line."

Answer of the Court: "We answer the point as requested, and will refer more particularly to the principle applicable to it on the evidence presented in the case in our answer to sixth point submitted by counsel for defendant."

Defendant's 2d point: "If the jury believe from the evidence that the land claimed by plaintiff in this suit was included in the original survey of John Carson given in evidence by defendant in this cause, that the plaintiff is not entitled to recover the same in this suit."

To the 2d point the Court answer: "This we do not agree to. John Carson, or rather Robert O'Neille having his claim, procured the resurvey, and if by that excluded lands in his original survey patenting the portion included in the original survey only, what he excluded by his resurvey would be subject to the warrant and survey of a subsequent applicant, unless it is contained in the survey of Esther Cramer."

Defendant's 4th point: "That the proceedings before the board of property on the petition of Robert O'Neille, the owner of the John Carson warrant and survey for a resurvey, and the making of the resurvey and the return thereof by Henry Donnel, deputy surveyor of the county by order of the board of property and the surveyor-general, the same having been acquiesced in by all parties, is conclusive to establish the survey of Esther Cramer as well as that of John Carson; that the Commonwealth is bound by the act of her officers in that proceeding, and could not again grant the land thus appropriated to Esther Cramer; and if the jury find from the evidence that plaintiff's survey is covered and included by the Esther Cramer as established by Henry Donnel in the resurvey of John Carson, that they should find for defendant."

To defendant's 4th point the Court answer: "The return of resurvey is of the John Carson warrant, and the acquiescence of the parties merely when the land was unoccupied by the claimants would not in our judgment establish the survey of the Esther Cramer if the part thrown out was not originally included in the Esther Cramer survey. The Commonwealth is bound by the acts of her officers; but if the act in this instance threw out land of the John Carson survey that was not included originally in the Esther Cramer survey, it would not be an appropriation of the part thrown out to the Esther Cramer survey. But its being so thrown out by Mr. Donnel when his attention by the order of resurvey was especially called to the subject of an interference between those two surveys, and at a time when in the course of things the chances of ascertaining the true state of the case from monuments on the ground was better than at the time of later examinations, his throwing it out of the Carson survey as belonging to the Esther Cramer, is a circumstance to be considered by

[The Carbon Run Improvement Company *v.* Rockafeller.]

you in determining whether the part thrown off the Carson was not a part of the Esther Cramer survey; and if it was, then as stated in the latter part of the propositions, your verdict should be for defendant. But this fact is to be determined from all the evidence submitted to you."

Defendant's 6th point: "That, as matter of law, under the evidence in this case, the owner of the Esther Cramer warrant and survey is entitled to the full length of official distance called for on the north line from the white oak, the south-east corner of the Leverson survey, running the official distance north 166 perches to the post called for, and if the jury should believe from the evidence that the pine stump at the corner of James Hepburn is the southeast corner of Esther Cramer, and that the east line was left open, the legal and proper way of closing the survey would be to run a line from the pine stump to the north-east official call of Esther Cramer."

To defendant's 6th point the Court answer: "A survey returned and accepted in the land office and undisturbed or not interfered with for twenty-one years, will give the title to the warrantee of all the lands within the lines shown by the return of survey; and if in this case the survey returned had shown a line from the pine to the end of the 166 perches, where a post is called for on the north line of the Esther Cramer, from the white oak referred to, it would designate the point of intersection at the end of the 166 perches, although the lines might never have been run on the ground. Or, if the evidence satisfies you that the north line of the Esther Cramer was run on the ground the 166 perches from the white oak or further, it would designate that as the point of intersection for the closing line from the pine, although the latter line was never run on the ground, and would entitle the Esther Cramer to the full length of 166 perches on the north line; and if you should find that the pine stump at the corner of the James Hepburn is the south-east corner of the Esther Cramer, and the east line of the Esther Cramer was left open, the legal and proper way of closing the survey would be to run a line from the pine stump to the end of the 166 perches on the north line of the Esther Cramer and south line of the re-survey of the John Carson. And if you should be satisfied that the north line of the Esther Cramer was run on the ground and establish the pine stump as the extension of the southern line of Esther Cramer, your verdict, if you find for the plaintiff, should be for that portion of the land outside of the Esther Cramer adopting the eastern boundary by a line from the pine to the end of the 166 perches on the north line, and included in Rockafeller survey; and, in case of your so finding, you will designate in your verdict the part you so find for the plaintiff by identifying it on the draft where that portion is represented. But, if there is not evidence to show that the north line

[The Carbon Run Improvement Company *v.* Rockafeller.]

was run the 166 perches, then you determine the cause on the evidence intrusted to you in relation to whether there was any vacant land there upon which Rockafeller's warrant could be located, to which we have directed your attention as the main question in the case."

Defendants' 7th point : " That from all the evidence in the cause the defendants are entitled to the verdict."

To defendants' 7th point the Court answer: " We refuse to withdraw the case from you as indicated by this point.

" You will determine the facts on the evidence before you, without regard to who are the parties, and apply them to the principles of law we have stated govern the case.   Your duty is to return a verdict according to the evidence."

To opinion and answers to points defendant excepts.

Extract from the general charge of the Court: " Any difficulty which arises, is from establishing the pine on the north-eastern corner of the James Hepburn as a south-west corner of the Esther Cramer.   The draft and patent of the Esther Cramer call for a pine at that corner, but giving the courses and distances of both patent and survey; by adopting this pine the south line of Esther Cramer would be shortened just the breadth of the William M. Rockafeller survey and exclude from the Esther Cramer survey the quantity of land included in the Rockafeller survey; and the important question in this case is whether the pine corner spoken of by the witnesses is the pine corner of the Esther Cramer called for on her return of survey.   If it is, being a monument on the ground, it would govern the survey notwithstanding the lines would not hold out their official distance, and would establish the extent of the Esther Cramer at that point and throw out the land east of it; and the plaintiff would be entitled to recover."

The jury found a verdict for the plaintiff, and the defendants sued out this writ of error.

Error was assigned to the answers of the Court to the foregoing points, and to so much of the charge as above set forth.

*Maynard* and *Donnell*, for plaintiff in error.—We requested the Court to say that if the land claimed by plaintiff in this suit, had been previously appropriated by warrant and survey, duly returned and accepted, that it was not subject to a second warrant. It was not disputed that the Rockafeller survey was included in the John Carson survey.   But it is contended that O'Neille abandoned to the Commonwealth all that was not included in his resurvey.   The Court being of that opinion, ruled the point against the plaintiff in error.   The doctrine of abandonment does not apply to a case like this: 11 *Ser. & R.* 340; 4 *W. & Ser.* 78; 5 *Ib.* 196.

[The Carbon Run Improvement Company *v.* Rockafeller.]

The Cramer survey was the oldest, and O'Neille, in petitioning the board of property, set forth an interference with it, and desired to have patented all that was not in the Cramer survey. He desired to give it up to her.

Abandonment is said to be a question of intention. The lines were comparatively new and fresh at that time; they were familiar with them, and it is admitted by O'Neille that this land excluded from his survey belonged to Esther Cramer. How can an intention to abandon to the Commonwealth then be inferred?

It was not possible to make the resurvey of the Carson without first establishing the lines of the Cramer survey. The presumption of law, from the great lapse of time and all the other circumstances, establish it conclusively.

The original monuments found on the ground on three sides, north, west, and south, the blocks of the trees, the re-examinations by Montgomery in 1802, and by Donnel in 1824, entitled the defendants, both in law and fact, to the verdict of the jury.

It was returned for a period of almost sixty years, and the defendants were entitled to a distinct instruction that after so long a time the lines shown by the official draft returned were conclusive. But the Court submitted both the law and fact to the jury, and leave the jury to find whether the lines were actually run upon the ground. The Court submit the whole question of whether there was any vacant land there, upon which plaintiff's warrant could be located. On the subject of the survey, they cited 13 *Ser. & R.* 113 and 382; 8 *W. & Ser.* 142.

The presumption is, that the survey has been regularly made after twenty-one years: 7 *Barr* 67; 1 *W. & Ser.* 79.

If there had been an interference, it was the duty of the surveyor to note it: 7 *W. & Ser.* 211.

In order to show a vacancy of a small strip between two old surveys, it must be shown affirmatively that the lines were run and marked upon the ground: 1 *Harris* 459; 8 *Ib.* 80.

*Comly* and *Casey,* contrâ.—We conceive that the only question involved was one of fact, which we submit was properly left to the jury. Was the land vacant when the plaintiff's warrant was laid? The first survey of John Carson covered it; his warrant is relocated, no difference for what purpose; and the part excluded, if within the original lines of the Cramer survey went to her; if not, it reverted back to the state. If not in her survey, it could not enure to her benefit. She was no party to the proceeding, and could be neither benefited nor bound by it. It could not operate as a conveyance or transfer of John Carson's right to her. He was relinquishing a claim instead of transferring a right. It did not remain in the owner of the John Carson, for his rights were fixed and ascertained by the resurvey to which he was a party,

and in which he was an active participant. The point has been ruled by this Court: 4 *Yeates* 218; 5 *Watts* 465.

The answer of the Court to defendants' 4th point was full and fair. The order of resurvey was of the John Carson tract only. The deputy had no order or authority to resurvey the Cramer; it had been returned, accepted, and patented. The surveyor could not affect her rights or limit or extend her lines. The answer was more favourable than the defendants had a right to expect.

The 6th point turned on a disputed fact in the cause, viz., whether the lines referred to had been run upon the ground, and the learned Judge could not have withdrawn its decision from the jury. His Honour adopted not only the rule, but almost the precise words of the law as settled by this Court, that the marks and monuments upon the ground govern and control the location of the survey: 4 *Harris* 232; 4 *Ser. & R.* 456.

The opinion of the Court was delivered by

WOODWARD, J.—The only questions of law in this case relate to the proceedings of the Board of Property on the petition of Robert O'Neille, as the owner of the John Carson tract; and we think the Court apprehended and stated the effect of these proceedings correctly. A holder by warrant and survey may, with the sanction of the Board of Property, contract the lines of his survey and throw out part of his land, so that he do not prejudice other interests; and the part excluded relapses into the general mass of public lands, and may again be appropriated by warrant and survey as vacant land. But when the exscinded portion is within the lines of another survey already made, it does not become vacant land, but belongs to that survey and is simply relieved of the consequences of an interference.

Whether the part cut off from the Carson survey became vacant land or not, depended on the location of the Esther Cramer warrant.

It was vacant land and open to Rockafeller's warrant unless it was within the lines of Esther Cramer; but whether within these lines or not was a question of fact for the jury upon all the evidence. The counsel for the plaintiff in error insisted that the resurvey of the Carson warrant must have fixed the lines of the Cramer survey, and that as O'Neille asked only for the exclusion of the interference, whatever was excluded from the resurvey of the Carson must have fallen within the lines of the Cramer.

A fair answer to this argument is, that the owner of the Esther Cramer was not a party to the proceedings before the Board of Property, and could not be affected by them, either for good or ill. Esther Cramer was moreover an older survey than John Carson, and the adjustment of the lines of a younger survey never can affect the location of the elder. It lies where it was put by the

[The Carbon Run Improvement Company *v.* Rockafeller.]

surveyor; and, whilst it may help to locate surrounding surveys that are younger, it is not to be changed, contracted, or enlarged, by what may be done in the location of them.

For these reasons we think the answers of the Court to the several points were substantially correct, and that they were right in submitting the whole case to the jury on the question whether the disputed territory lay within or without the lines of the Cramer survey. On that question, the pine corner so much discussed was calculated to exert a very material influence. If the jury were satisfied from the evidence that that was really the south-eastern corner called for in the Cramer survey, and that the north line from the white oak was not run on the ground, they might well locate the survey so as to exclude the disputed territory; but if they found that north line, the closing line from its extremity to the pine would take part of the land in controversy *into* the survey. In regard to this north line, the instructions given in answer to the defendant's 6th point were as favourable to the defendants as they had reason to expect, and if the judge mistook them, the remedy was a new trial, and not a writ of error.

On the whole, we see nothing in the law laid down to correct, and we have neither the inclination nor the power to review the finding upon the facts.

The judgment is affirmed.